**STATE of Missouri, Respondent,**

v.

**Jeffery Craig CHARLES, Appellant.**

**No. 62131.**

Supreme Court of Missouri,
En Banc.

March 9, 1981.

Rehearing Denied April 9, 1981.

Gary Gardner, Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Steven Garrett, Asst. Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

HIGGINS, Judge.

Jeffery Craig Charles was convicted by a jury of intentional second degree murder and first degree robbery; he was sentenced to life imprisonment for murder, and a concurrent term of ten years for robbery. In an effort to secure reversal of his convictions, he charges the court erred: (1) in admitting identification evidence on the ground it arose from impermissibly suggestive identification procedures; and (2) in failing to dismiss the robbery charge on the

ground it placed him in double jeopardy by subjecting him to multiple punishments for the same offense. Affirmed.[1]

Sufficiency of evidence is not questioned. There is evidence which shows that on the afternoon of February 28, 1976, two acquaintances of defendant met and had a conversation with him while on their way to a Seven-Eleven Store at 57th Street and Troost Avenue in Kansas city, Missouri. At that time defendant told them he was going to the Seven-Eleven Store to rob it. After they arrived at the store and made their purchases defendant entered. He asked the clerk behind the counter for money, pulled a gun, and shot him in the stomach. He then jumped over the counter, took money from the cash register, and ran from the store. The clerk died from the gunshot wound to his stomach. Later that evening, defendant told one of the two acquaintances that he shot the man because he reached for an alarm button, and that he had taken $57.00. Paul Bryant identified defendant at trial as the man he saw run from the store, jump on a bicycle and ride off.

Appellant contends the trial court erred in admitting into evidence his in-court and his out-of-court identifications by Paul Bryant because the identifications were the result of impermissibly suggestive identification procedures.

At the time of the crime, Paul Bryant was driving by the Seven-Eleven Store in a van. As he approached a stop sign his attention was attracted to a running man. He observed through the window on the driver's side of the van a black man he described as eighteen years old, less than six feet tall, with a stocky build. He saw the man run along the front of the store, round the corner, run along the side of the store, jump on a bicycle and travel several feet.

Three and one-half months later the police showed Mr. Bryant six photographs.

1. Defendant was convicted of second degree murder and first degree robbery in a previous trial; the judgment was reversed and the case remanded for new trial for an error not now present. *See State v. Charles*, 572 S.W.2d 193 (Mo.App.1978).

He told the police that he would only narrow the selection to two photographs because he was afraid that if he selected one, it would be taken as a positive identification and he would not have a chance to see a lineup in which he could observe complexion and body build. He selected the photograph of the person he saw and another photograph that most resembled that person. The photographs selected were those of defendant and one Johnny Quinn.

Eight months after the murder and robbery Mr. Bryant viewed a lineup consisting of three men, including defendant. The police were unable to obtain the presence of Quinn. Bryant identified defendant as the man he had seen running from the store. It is the absence of Quinn from the lineup that is asserted by defendant to have resulted in an impermissibly suggestive identification procedure.

This contention was rejected in *State v. Burns*, 581 S.W.2d 590 (Mo.App.1979). In that case, the witness positively identified defendant's picture when shown police photographs. At the lineup, the witness also positively identified defendant who was the only lineup participant whose picture had been shown to the witness. The court held that this did not result in an identification produced by improper suggestion or influence.

■ In any such situation, reliability, rather than suggestiveness is the "linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Higgins*, 592 S.W.2d 151, 160 (Mo. banc 1979). In determining reliability the court looks at the "totality of the circumstances" including: (1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite, supra* at 114; *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375,

382, 34 L.Ed.2d 401; *State v. Higgins, supra* at 160.

■ Paul Bryant had the opportunity to view defendant at the time of the crime. As he approached the stop sign he saw defendant run 10 feet along the front of the store toward his vehicle, round the corner, run 10 to 15 feet along the side of the store, jump on a bicycle, and ride off. Bryant testified that his attention was drawn by the speed of defendant and that it was fixed on defendant as he ran towards his vehicle and rounded the corner of the store. Bryant accurately described defendant to the police. When shown photographs of possible suspects, he selected the photograph of the man he had seen and then selected another photograph most resembling that one to insure that he would be able to view a lineup before making a positive identification. When he viewed the lineup he knew that only one of the two persons whose photographs he picked was present, but that the person he wanted to see was the defendant, the person in the lineup. Although there was a period of eight months between the commission of the crime and the lineup, the time lapse itself does not affect the reliability of the identification. *See Neil v. Biggers, supra.* In this totality of circumstances it cannot be said the identification was unreliable or that there was "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see also Manson v. Brathwaite, supra* 432 U.S. at 116, 97 S.Ct. at 2253. The trial court did not err in admitting the identification evidence.

Appellant relies on *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), but it is distinguishable on its facts and does not compel a different result. In that case, the witness to a robbery viewed a three man lineup. Defendant stood out from the other two men by the contrast of his height and because he was wearing a leather jacket similar to that worn by the robber. The witness could not positively identify defendant as the robber. Defend-

ant was then brought alone into a room and seated across the table from the witness. He was still uncertain. A week later the police arranged a five man lineup. Defendant was the only person in the second lineup who had appeared in the first. At this time, the witness positively identified defendant. The United States Supreme Court stated that "the pretrial confrontations clearly were so arranged as to make the resulting identification virtually inevitable", and held that the identification procedure employed "so undermined the reliability of the eyewitness identification as to violate due process." *Id.* at 443, 89 S.Ct. at 1128.

Appellant contends the trial court erred in failing to dismiss the robbery count because it placed him in double jeopardy by subjecting him to multiple punishments for the same offense. He argues that the shooting of the victim constituted the same necessary act of force for both the murder and the robbery.

Defendant was charged and convicted of second degree murder for the intentional killing of the victim; he was also charged and convicted of robbery in the first degree for violently taking property from the victim against his will by means of a dangerous and deadly weapon.

*State v. Moore*, 326 Mo. 1199, 33 S.W.2d 905 (1930), controls this case. Defendant Moore entered a plea of guilty to a charge of first degree murder for the premeditated and deliberate killing of the victim of a robbery. He was subsequently charged and convicted of robbing his victim.[2] In rejecting the contention presented here the Court stated:

> [M]urder and robbery are not the same offense, nor does one necessarily emanate from the other. While their common essential element is that of assault, yet they are distinct and separate statutory of-

fenses. * * * It may be that during the same transaction both offenses are committed, yet they remain separate and distinct offenses and are not the same°offense.

*Id.* at 1204, 33 S.W.2d 907.

The Fifth Amendment to the Constitution of the United States, applicable to the states under the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb * * *."

■ A person may by one act, however, violate more than one statute or commit more than one offense. *State v. Moore, supra*, 33 S.W.2d at 907. The applicable test for determining whether the offenses charged are one and the same is whether each offense necessitates proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980).

■ The offense of second degree murder committed by an intentional killing and the offense of robbery are not the same offense. Such second degree murder requires the commission of a homicide, but not the taking of property from another; robbery requires the taking of property from another against his will, but not the commission of a homicide. The Fifth Amendment does not require dismissal of the robbery conviction.

Appellant cites *State v. Neal*, 514 S.W.2d 544 (Mo. banc 1974); *State v. Parsons*, 513 S.W.2d 430 (Mo.1974); and *State v. Richardson*, 460 S.W.2d 537 (Mo. banc 1970), to support his contention. In *State v. Neal, supra*, the defendant's conviction of first degree robbery of a victim was affirmed; a companion conviction of assault with intent to kill the same victim was reversed. In *State v. Parsons, supra*, the defendant's

---

2. *State v. Moore* has been construed as a case of conviction for an underlying robbery subsequent to a conviction for felony-murder in perpetration of the robbery. *See* e. g., *Thomas v. State*, 548 S.W.2d 564 (Mo. banc 1977). The record in *State v. Moore* shows, however, that although originally charged with first degree murder for the killing of one Heller in perpetration of robbery of Heller, Moore was convicted on a plea of guilty to an amended information which charged that he "feloniously, wilfully, deliberately, premeditatedly, on purpose and of his malice aforethought" did "kill and murder" one Heller.

conviction of first degree murder by bombing was affirmed; a companion conviction of putting the same person in danger of bodily injury by exploding a bomb was reversed. In *State v. Richardson, supra,* defendant was convicted of attempted robbery; a subsequent conviction of assault with intent to maim for the same conduct was reversed.

Charles does not come within the protection of these cases because, as demonstrated, their prohibitions were against the conviction and punishment of a defendant for two offenses which in law and fact were but one crime. *See State v. Johnson,* 549 S.W.2d 627 (Mo.App.1977).

The judgment is affirmed.

All concur.