Karen King Mitchell, Judge
David Anderson appeals, following a jury trial, his convictions of first-degree *826 assault, § 565.050,[1] first-degree burglary, § 569.160, and two counts of armed criminal action, § 571.015, for which he was sentenced as a persistent offender to a total term of eighteen years' imprisonment. Anderson raises four points on appeal: (1) a double jeopardy violation based upon his convictions for two counts of armed criminal action arising out of the same transaction; (2) error in the exclusion of impeachment evidence; (3) error in failing to secure an on-the-record waiver of Anderson's right to testify; and (4) instructional error in the verdict director for first-degree burglary. Finding no error, we affirm.
Background
On April 21, 2015, around 2:30 a.m., Donald Walker awoke to a knock on the front door of his home in Jackson County, Missouri. Walker got out of bed, turned on some lights, and headed toward the front door, asking, "Who is it?" He opened the blinds on the window of his front door and saw his friend Elzadie (Zada) Dyer. Dyer asked Walker if his brother was there, and Walker told her that he was not. At that point, Anderson (whom Walker knew to be Dyer's boyfriend but whom Walker had not initially seen upon looking out the window) stepped around from behind Dyer and told Walker, "I got something for you, man." Anderson then kicked in the door, as Walker fled to his bedroom to retrieve a handgun. Walker also immediately called 911 to report the home invasion. While Walker was trying to get his handgun, he heard Anderson enter the home and saw Anderson begin shooting down the hallway toward Walker. Walker returned fire, but his gun jammed, so he then retrieved a shotgun he also kept in his bedroom, and he fired it twice in Anderson's direction. Walker was unsure whether anyone was still in the home, so he picked up his handgun and began to walk out into the living room. By that time, police had arrived and instructed Walker to put down his weapon, which he did.
Walker advised the police that Dyer and Anderson, and possibly a third person, had broken into his home and shot at him. Walker later identified both Dyer and Anderson in photographic lineups. Anderson was subsequently arrested and charged, as a persistent offender, with first-degree assault, first-degree burglary, and two counts of armed criminal action, all under the theory that he was either acting alone or with another. At trial, a jury found Anderson guilty as charged, and the trial court sentenced him, as a persistent offender, to concurrent terms of eighteen years for assault, ten years for burglary, and three years on each count of armed criminal action, for a total sentence of eighteen years' imprisonment. Anderson appeals.
Standard of Review
Anderson raises four claims of error on appeal, but none of them are preserved for review. Anderson acknowledges that Points I, III, and IV are not preserved due to his failure to object, but he fails to acknowledge that Point II is likewise not preserved due to his failure to raise the issue in a timely filed motion for new trial.
Subject to various exceptions inapplicable here, "[i]n jury-tried cases, allegations of error to be preserved for appellate review must be included in a motion for new *827 trial." Rule 29.11(d).[2] Here, the basis for Anderson's claim in Point II was raised in a motion for new trial, but that motion was not timely filed.
"A motion for a new trial ... shall be filed within fifteen days after the return of the verdict." Rule 29.11(b). "On application of the defendant made within fifteen days after the return of the verdict and for good cause shown the court may extend the time for filing of such motions for one additional period not to exceed ten days." Id.
The verdicts were entered on April 21, 2016. Following the announcement of the verdicts, Anderson's counsel requested "the additional time ... for motion for new trial," which would have made the motion due on May 16, 2016. Anderson failed to file his motion for new trial on that date; instead, the following day, May 17, 2016, Anderson's counsel filed a request to file Anderson's motion for new trial out of time, claiming that she had misread the applicable rules and erroneously believed she had thirty days, rather than twenty-five, to file the motion for new trial. The trial court granted Anderson's motion for leave to file the motion for new trial out of time, and Anderson's motion was then filed on May 17, 2016, one day out of time.
"A trial court is not empowered to waive or extend the requirements of the rules as to the filing of a new trial motion and a motion filed beyond the time which the rules allow preserves nothing for appellate review." State v. Bailey , 645 S.W.2d 211, 212 (Mo. App. W.D. 1983). Though the claim underlying Anderson's Point II was set out in his motion for new trial, because that motion was not filed within the time limits of Rule 29.11(b), it is not preserved and may be reviewed-if at all-for only plain error resulting in a manifest injustice or miscarriage of justice. See id. ; see also State v. Carter , 523 S.W.3d 590, 599 (Mo. App. W.D. 2017) (holding that claim, included in an untimely motion for new trial, was not preserved for review). And, as mentioned above, Anderson acknowledges that none of his remaining three points were properly preserved either. Thus, they are also reviewable for only plain error resulting in manifest injustice or miscarriage of justice.
"Unpreserved claims may be reviewed in the [c]ourt's discretion for plain error." State v. Smith , 522 S.W.3d 221, 231-32 (Mo. banc 2017). But "[s]uch errors must be evident, obvious, and clear." Id. at 232 (quoting State v. Taylor , 466 S.W.3d 521, 533 (Mo. banc 2015) ). "Plain error occurs when an alleged error provides 'substantial grounds for believing a manifest injustice or miscarriage of justice occurred.' " Id. (quoting Taylor , 466 S.W.3d at 533 ).
Analysis
Anderson raises four points on appeal. In his first point, he argues that the trial court plainly erred, in violation of his right to be free from double jeopardy, in entering convictions and sentences for two counts of armed criminal action because they arose from the same transaction. In his second point, he argues that the trial court erred in sustaining the State's objection to Anderson's question of one of the detectives regarding an alleged prior inconsistent statement made by Walker. In his third point, he claims that the trial court plainly erred, in violation of his right to testify, by failing to secure an on-the- *828 record waiver from Anderson of that right. And, in his final point, Anderson argues that the trial court plainly erred in providing the jury with the verdict director for first-degree burglary because, he claims, it misstated the law.
A. Conviction for multiple counts of armed criminal action, predicated upon separate felonies, does not violate double jeopardy.
In his first point, Anderson argues that his convictions for armed criminal action, though predicated upon separate felonies, violate the prohibition against double jeopardy because, he claims, § 571.015, the statute defining armed criminal action, is vague regarding the permissible unit of prosecution. We disagree.
"The United States Supreme Court has determined that the federal double jeopardy clause protects defendants not only from successive prosecutions for the same offense after either an acquittal or a conviction, but also from multiple punishments for the same offense." State v. Liberty , 370 S.W.3d 537, 546 (Mo. banc 2012) (quoting State v. McTush , 827 S.W.2d 184, 186 (Mo. banc 1992) ). "Typically, to determine whether multiple charges constitute the same offense, courts consider 'whether each offense necessitates proof of a fact which the other does not.' " Id. (quoting State v. Charles , 612 S.W.2d 778, 781 (Mo. banc 1981) ). "But when a defendant's conduct is continuous, involves more than one item or involves more than one victim, the test more appropriately is focused on the conduct the legislature intended to proscribe under the statute." Id. "Double jeopardy analysis regarding multiple punishments is, therefore, limited to determining whether cumulative punishments were intended by the legislature." Id. at 546-47 (quoting McTush , 827 S.W.2d at 186 ).
"To determine whether the legislature intended multiple punishments, a court looks first to the 'unit of prosecution' allowed by the statutes under which the defendant was charged." Id. at 547 (quoting State v. Sanchez , 186 S.W.3d 260, 267 (Mo. banc 2006) ). "If a charging statute does not express unambiguously the permissible 'unit of prosecution,' the rule of lenity resolves doubts about the intended unit in favor of the defendant and dictates that a single criminal transaction should not result in charges for multiple offenses." Id. "But '[t]he rule of lenity applies to interpretation of statutes only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what the legislature intended.' " Id. (quoting Fainter v. State , 174 S.W.3d 718, 721 (Mo. App. W.D. 2005) ).
Section 571.015 provides that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action...." § 571.015.1. "The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Id.
Anderson argues that the statute's reference to "any felony" in the first sentence renders it vague as to the permissible unit of prosecution and that, therefore, the rule of lenity dictates that we interpret it to mean that only one count of armed criminal action may be brought per transaction, *829 regardless of the number of distinct felonies committed "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon" during that single transaction.
"In determining double jeopardy, Missouri follows the separate or several offense rule rather than the same transaction rule." State v. Jackson , 410 S.W.3d 204, 215 (Mo. App. W.D. 2013) (quoting State v. Childs , 684 S.W.2d 508, 510-11 (Mo. App. E.D. 1984) ). "[A] defendant can be convicted of several offenses arising from the same set of facts without violation of double jeopardy." Id. (quoting Childs , 684 S.W.2d at 511 ). "In other words, one cannot be punished for the same offense twice, though there can be several offenses within the same conduct." Id.
Anderson suggests that his proposed interpretation of § 571.015 is a matter of first impression. But this suggestion overlooks the holdings in Trotter v. State , 443 S.W.3d 621 (Mo. App. W.D. 2014) ; Gaines v. State , 920 S.W.2d 563 (Mo. App. E.D. 1996) ; State v. Carter , 889 S.W.2d 106 (Mo. App. E.D. 1994) ; Forshee v. State , 763 S.W.2d 352 (Mo. App. S.D. 1988) ; and State v. Cooper , 712 S.W.2d 27 (Mo. App. E.D. 1986). In all of these cases, the courts rejected challenges to multiple convictions of armed criminal action as constituting double jeopardy. See Trotter , 443 S.W.3d at 625 (holding that, "[b]ecause the legislature specifically intended cumulative punishments for ACA and the underlying offenses of felony murder and unlawful use of a weapon, Trotter's conviction on the two ACA counts did not offend double jeopardy"); Gaines , 920 S.W.2d at 564 (holding that "[t]he use of the same weapon while committing a murder and a robbery is punishable separately so long as the underlying felonies are separate crimes"); Carter , 889 S.W.2d at 109 (rejecting the defendant's argument that, because he was convicted of felony murder predicated on first-degree robbery, it would violate double jeopardy to convict him of two counts of armed criminal action-one based on murder and one based on robbery); Forshee , 763 S.W.2d at 357 (holding that, where "both charges of armed criminal action [we]re supported by a separate and distinct felony, ... movant's double jeopardy rights were not violated"); Cooper , 712 S.W.2d at 31-32 (holding that "[e]ach time a dangerous instrument is employed to effectuate certain felonies, the crime of armed criminal action is committed [, and] ... subjecting defendant to cumulative penalties for multiple felonies committed through the use of a dangerous instrument or deadly weapon simply carries out and is consistent with th[e statutory] intent and the statutory scheme," which is "to deter the use of dangerous instruments or deadly weapons in the perpetration of crimes").[3]
In light of these multiple holdings contrary to Anderson's argument, we see no *830 evident, obvious, or clear error and need not proceed with plain error review. Point I is denied.
B. Anderson failed to lay a foundation for admission of an alleged prior inconsistent statement.
In his second point, Anderson argues that the court erred in sustaining the State's objection to Anderson's question of one of the detectives regarding an alleged prior inconsistent statement made by Walker. We disagree.
During Anderson's cross-examination of Officer Randy Evans, Anderson sought to elicit testimony from Evans that Walker had previously indicated that Dyer was holding a dark object in her hand when he first saw her on his porch. The State objected, arguing that the question sought to elicit hearsay. Anderson argued that the question was designed to present a prior inconsistent statement of Walker's and impeach his prior testimony.
During Walker's cross-examination, Anderson questioned Walker about his perceptions of Dyer on the night of the home invasion:
Q. And when you saw Zada at that time, you told the police-you told the detective that she had a dark object in her hand, right?
A. I don't know what she had in her hand. All I know is that she kind of like stepped back, when that guy-David, came out from behind her, and everything happened so fast, and that's when he was trying to kick in my door, and he came in my living room, started shooting down in the hallway at me.
Section 491.074 provides that "[n]otwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." "To admit a prior inconsistent statement as substantive evidence, the only necessary foundation is the inquiry as to whether the witness made the statement and whether the statement is true." State v. Tolen , 295 S.W.3d 883, 889 (Mo. App. E.D. 2009). "Prior statements may be used to impeach the credibility of a witness only if the judge is satisfied that the prior statements are, in fact, inconsistent." Id. "Absent the threshold showing of an inconsistency between the testimony and the [prior] statements ... use of the [prior statements] to impeach is questionable." Id. at 889-90.
Here, Anderson has not shown how Walker's testimony was inconsistent with his alleged prior statement to Detective Evans. When Walker was asked about his prior statement, he neither denied nor admitted making it; rather, he failed to directly answer the question and instead addressed Dyer's actions during the home invasion. Anderson did not ask any follow-up questions to clarify whether Walker was admitting or denying the alleged prior statement. Thus, he failed to lay a sufficient foundation to establish admissibility of the testimony he sought to elicit from Detective Evans.
In any event, we fail to see how Anderson was prejudiced by the court's alleged error. Presumably, Anderson was seeking to establish that Dyer, rather than *831 Anderson, had a gun. But, in light of the fact that Anderson was charged under a theory of accomplice liability, it did not matter whether he or Dyer had a gun, so long as the jury believed that one of them did and that they were acting together. Additionally, Anderson was able to impeach Walker's testimony in other ways, e.g. , by pointing out inconsistencies in Walker's testimony regarding his conversation with the 911 operator, the time frame for the events, and the number of people involved in the home invasion. Yet the jury still credited Walker's account; thus, there is no reason to believe that an additional inconsistency (assuming there was one) would have made any difference in the jury's determination.
Point II is denied.
C. The court was not required to secure an on-the-record waiver of Anderson's right to testify.
In his third point, Anderson argues that the court violated his right to testify by failing to obtain an on-the-record waiver of that right. We disagree.
Though "the more prudent course of action is for the trial court to voir dire the defendant, on the record, and outside the presence of the jury" regarding the defendant's right to testify, his understanding of that right, and whether he intends to exercise it, "[a] trial court has no duty to inquire from a criminal defendant who remains silent throughout the proceedings regarding whether he or she will testify." State v. Edwards , 173 S.W.3d 384, 386 (Mo. App. E.D. 2005) ; accord State v. Adkison , 517 S.W.3d 645, 651-52 (Mo. App. W.D. 2017) ; State v. Robertson , 396 S.W.3d 475, 476 (Mo. App. S.D. 2013).[4]
In light of this case law, we see no evident, obvious, or clear error necessitating plain error review.[5] Point III is denied.
D. Anderson has not demonstrated plain error in Instruction 16.
In his final point, Anderson argues that the court erred in submitting the verdict director for first-degree burglary to the jury because, he claims, the modification of the instruction to reflect the law of accomplice liability resulted in a misstatement of the law regarding the elements of burglary.
"In the realm of instructional error, plain error exists when it is clear that the trial court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted." State v. Escobar , 523 S.W.3d 545, 548 (Mo. App. W.D. 2017) (quoting State v. Hunt , 451 S.W.3d 251, 260 (Mo. banc 2014) ). "Instructional error seldom rises to *832 the level of plain error." Id. (quoting State v. Berry , 506 S.W.3d 357, 362 (Mo. App. W.D. 2016) ). "Instructional error is plain error [only] when it is apparent the error affected the verdict." Id. (quoting Hunt , 451 S.W.3d at 260 ). "The defendant bears the burden to prove that instructional error has produced manifest injustice." Id.
At trial, the State submitted Instruction 16, the verdict director for first-degree burglary. The instruction was based on MAI-CR 3d 323.52 (the first-degree burglary instruction) as modified by MAI-CR 3d 304.04 (the accomplice liability instruction), and provides:
A person is responsible for his own conduct and he is also responsible for the conduct of (another person) (other persons) in committing an offense if he acts with the other person(s) with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person(s) in committing it.
(As to Count ___, if) (If) you find and believe from the evidence beyond a reasonable doubt:
First, that (on) (on or about) [date ], in the (City) (County) of __________, State of Missouri, [Continue using the paragraphs from the MAI-CR 3d verdict director applicable to the offense and set out all the elements of the offense, ascribing the elements to the defendant or other person or persons with whom the defendant acted. See Notes on Use 5 for suggestions on handling various types of situations. See Notes on Use 7(b) for handling murder in the first degree. Place a comma at the end of the last paragraph submitting the elements of the offense. Then add the following: ]
then you are instructed that the offense of [name of offense ] has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
(Second) (Third) ( [next numbered paragraph ] ), that with the purpose of promoting or furthering the commission of that [name of offense ], the defendant [Insert basis for defendant's conduct being sufficient for being criminally responsible, using one of the following "(acted together with) (aided or encouraged) (acted together with or aided)." See Notes on Use 5 for the various options and when they should be used. After the appropriate option(s), state the name(s) of other person(s) or, if unknown, a general identification of the other(s) involved, such as "another person," "other person(s)," etc. ] in committing the offense, (and)
( [next numbered paragraph ], that [Continue in this and other paragraphs to deal with defenses as directed in MAI-CR 3d 304.11 and MAI-CR 3d 304.02. ],)
then you will find the defendant guilty (under Count ___) of [name of offense ] (, unless you find and believe [Continue with a reference to any affirmative defense applicable to the defendant and supported by the evidence. See MAI-CR 3d 304.11. ] ).
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense. [Omit this paragraph if an affirmative defense is submitted. ]
[If the MAI-CR 3d verdict director form for the offense contains mandatory *833 definitions, insert those definitions here. ]
MAI-CR 3d 323.52 is the pattern verdict director for first-degree burglary, and it provides:
(As to Count ___, if) (If) you find and believe from the evidence beyond a reasonable doubt:
First, that (on) (on or about) [date ], in the (City) (County) of __________, State of Missouri, the defendant knowingly (entered) (remained) unlawfully (in) (a building) (an inhabitable structure) located at [Briefly describe the location. ] and (owned) (possessed) by [name of owner or possessor ], and
Second, that defendant did so for the purpose of committing the crime of [name of crime ] therein, and
Third, that while the defendant was (effecting entry) (in the (building) (inhabitable structure)) (in immediate flight from the (building) (inhabitable structure)) [Insert one of the following. Omit brackets and number. ]
[1] (he) (another person) ( [name of person ] ) was armed with (explosives) (a deadly weapon),
[2] (he) (another person) ( [name of person ] ) (caused) (threatened) immediate physical injury to [name of person ], and that [name of person ] was not a participant in the crime,
[3] [name of person ] was present in the (building) (structure) and [name of person ] was not a participant in the crime, (and)
(Fourth, that ( [name of person ] ) (the other person referred to in paragraph Third) was a participant with the defendant in the commission of the offense,)
then you will find the defendant guilty (under Count _) of burglary in the first degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
[Insert a definition of the crime that defendant intended. ]
Instruction 16, the verdict director for first-degree burglary in Anderson's trial, provided as follows:
As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about April 21, 2015, in the County of Jackson, State of Missouri, the defendant knowingly entered unlawfully a building located at 2812 E 77th Terrace, Kansas City, Missouri, and possessed by Donald Walker, and
Second, that defendant or another person did so for the purpose of committing the crime of assault therein, and
Third, that while the defendant was effecting entry in the building the defendant or another person was armed with a deadly weapon,
then you are instructed that the offense of burglary in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
Fourth, that with the purpose of promoting or furthering the commission of that burglary in the first degree, the defendant acted together with or aided the other person in committing the offense *834 then you will find the defendant guilty under Count III of burglary in the first degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
As used in this instruction, the term "assault" means causing or attempting to cause physical injury.
Anderson acknowledges that "[t]his instruction followed MAI-CR 3d 323.52 (first-degree burglary) and MAI-CR 3d 304.04 (accomplice liability) as well as their notes on use discussing a burglary involving more than one participant." This fact, alone, suggests that plain error review would be inappropriate here, as the instruction's compliance with MAI negates the existence of any evident, obvious, or clear error. State v. Lewis , 955 S.W.2d 563, 566 (Mo. App. W.D. 1997) ("An instruction in the format of MAI-CR3d simply does not facially establish substantial grounds for believing that manifest injustice has occurred."); see also State v. Scott , 858 S.W.2d 282, 286 (Mo. App. W.D. 1993) (declining to engage in plain error review of an MAI-compliant instruction). "MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions." State v. Forrest , 183 S.W.3d 218, 229 (Mo. banc 2006) ; see also Rule 28.02(c) ("Whenever there is an MAI-CR instruction ... applicable under the law and Notes On Use, the MAI-CR instruction ... shall be given or used to the exclusion of any other instruction ...." (emphasis added)). Accordingly, Point IV is denied.[6]
Conclusion
Anderson has failed to demonstrate any error, plain or otherwise. Accordingly, his convictions and sentences are affirmed.
Cynthia L. Martin, Presiding Judge, and James Edward Welsh, Judge, concur.

All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2014 Cumulative Supplement, unless otherwise noted.

All rule references are to the Missouri Supreme Court Rules (2017).

Anderson's interpretation has been rejected not only in the armed criminal action context but also in reference to the alleged ambiguity of the word "any" in a similarly worded criminal statute. State v. Williams , 542 S.W.2d 3, 5 (Mo. App. 1976). In Williams , the appellant argued that, under former § 195.020 (which made it "unlawful for any person ... to ... possess ... any controlled or counterfeit substance "), prosecution for simultaneous possession of multiple controlled substances violated the prohibition against double jeopardy. Id. (emphasis added) (internal quotations omitted). The court disagreed, holding that "[t]he use of the word 'any' indicates that each separate substance possessed is an unlawful act." Id. (emphasis added). "If the legislature had intended that the possession of several Schedule I substances would only constitute a single offense, it could have used words such as 'one or more substances' to evidence that intent."Id. Williams was distinguished in State v. Liberty , 370 S.W.3d 537, 551 (Mo. banc 2012), upon which Anderson heavily relies, but remains good law.

Anderson argues that we should disregard these cases because State v. Edwards , 173 S.W.3d 384, 386 (Mo. App. E.D. 2005), did not cite any authority to support its holding. But Anderson's own authority notes that "the majority of courts [from other jurisdictions] have concluded that a trial court is not required to conduct a colloquy with a defendant to determine whether he has knowingly and intelligently waived his right to testify in his own behalf." Vay v. Commonwealth , 67 Va.App. 236, 795 S.E.2d 495, 506 (2017) (collecting cases).

Additionally, nowhere in either Anderson's opening or his reply brief does he claim that he wanted to testify. Thus, we cannot say that his right to testify was denied when he does not even claim a desire to have exercised it. "[O]pportunity not taken when given is not opportunity denied." State Bd. of Registration for Healing Arts v. Masters , 512 S.W.2d 150, 166 (Mo. App. 1974).

Anderson argues that the instruction misstated the law in such a way as to allow the jury to conclude that Anderson was guilty solely upon a finding that Walker (the victim) was armed. This is a strained interpretation of the instruction and cherry-picks a single paragraph from the instruction as a whole. Under the instruction, before the jury could find Anderson guilty, it had to find beyond a reasonable doubt that, "with the purpose of promoting or furthering the commission of that burglary in the first degree, [Anderson] acted together with or aided the other person in committing the offense. " (Emphasis added.) Clearly, Walker was not on trial for committing any offense and there was no evidence whatsoever that Anderson was acting together with or aiding Walker in any way; rather, the evidence showed that Anderson was trying to kill or at least seriously injure Walker. "[A]bsent a showing to the contrary, we presume that jurors follow the court's instructions." State v. Morgan , 366 S.W.3d 565, 583-84 (Mo. App. E.D. 2012). Additionally, "[j]urors are presumed to have ordinary intelligence and common sense." State v. Jordan , 404 S.W.3d 292, 302 (Mo. App. E.D. 2012). Contrary to Anderson's assertion, it is wholly unreasonable to believe that the jury may have convicted Anderson based upon Walker's possession of a gun, as doing so would have been contrary to the instruction, as a whole, and against common sense.