

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD36022 |
| | ) | |
| MICHAEL DUANE HANCOCK, | ) | FILED: August 4, 2020 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable J. Ronald Carrier, Judge

## **AFFIRMED**

A masked man robbed a convenience store at gunpoint at 4 a.m. A mobile security guard who saw him exit and glimpsed his gun called 911, reported where the armed man was walking, then tracked him from a distance, idling slowly, until the robber walked into a wooded area near a homeless camp.

Police quickly arrived and encountered Michael Hancock walking in the dark. He initially ignored them. They called out "Police. Stop." Hancock ran. The police gave chase. One officer gained on Hancock, who turned and pointed a gun. The officer fired, wounding Hancock, who was later charged with robbery and weapons crimes.

Identification was the key trial issue. Had Hancock been the masked robber? After four days of trial, a jury said yes, convicting Hancock of all charges in just 49 minutes.

Hancock appeals. He does not contest the sufficiency of proof of his crimes. Instead he charges error in excluding gun and voice identification testimony by his experts. His claims are not preserved.

## Preservation

The trial court granted Hancock's request for Rule 29.11(b)'s full 25 days for post-trial motions, but incorrectly announced that deadline as "January 10, 2019," when it was actually January 8.

Hancock's new-trial motion included his instant claims, but was filed one day late on January 9. At the hearing, the court acknowledged the motion was late by rule and that courts generally cannot waive or extend that deadline. In excusing the violation anyway, the court opined that court rules were not absolute and that Hancock's counsel relied on the court's miscalculation.

We understand the court's motivation in so ruling, but find no persuasive authority for such action. With exceptions inapplicable here, untimely new-trial motions preserve nothing for appellate review, even those just one day late that the trial court agrees to consider. *See, e.g., **State v. Anderson***, 539 S.W.3d 823, 826-27 (Mo.App. 2017). Complaints in such situations "may be reviewed – if at all – for only plain error resulting in a manifest injustice or miscarriage of justice." ***Id***. at 827.

Hancock offers no persuasive authority otherwise. If courts cannot purposefully waive or extend Rule 29.11(b) deadlines, and parties cannot rely on such intentional efforts, can mere miscalculations fare better? Yet, as next seen, Hancock loses anyway as he does not show the abuse of discretion needed to prevail had his claims been preserved.[1]

## Point 1

The store clerk ("Victim") told authorities she recognized the robber, by voice, as one of her regular customers. Less than two weeks before trial, Hancock sought to endorse a North Carolina professor to testify as an expert on voice misidentification ("Voice Expert"). The court denied that request, but ruled that Hancock could make an offer of proof at trial, which he unsuccessfully did.

---

[1] *See, e.g.*, ***State v. Boss***, 577 S.W.3d 509, 516 (Mo.App. 2019).

Point 1 claims the trial court prejudicially erred in ruling Voice Expert "could not testify and in rejecting the offer of proof done as to her intended testimony and thereby prohibited her from testifying at trial before the jury ...." We disagree for several reasons.[2]

First, Hancock did not bring Voice Expert to Missouri for trial, citing cost concerns, or seek to preserve her testimony for court use via Rules 25.13 and 25.14. Instead, at trial, Hancock tendered Voice Expert's CV, and her opinions by affidavit, expressly offering all for their truth, but conceding that he could cite no applicable hearsay exception. Given those representations, it was within the court's discretion not to admit the documents.[3]

Next, the court also correctly found the documents did not establish § 490.065.2 "reliability."[4] Hancock's burden was to proffer expert opinion "based on sufficient facts or data" that was "the product of reliable principles and methods" and show Voice Expert "reliably applied the principles and methods to the facts of the case." § 490.065.2(1)(b)-(d). For those opinions based on facts or data Voice Expert had not personally observed, Hancock also had to show that "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]" § 490.065.2(2). Such foundation commonly is laid through the expert's own testimony, but these documents omit

---

[2] For reasons not relevant here, the trial judge differed from the judge who had previously ruled. Hancock also complains about the first judge's order, but provides no transcript of that hearing, so we have no basis to fault the ruling, which in any event was interlocutory and subject to change. We do not even know that Hancock made an initial offer of proof; the court's ruling suggests Hancock did not.

[3] Had Hancock hoped by this method to obtain appellate review of testimony without even trying to offer it in an admissible form at trial, he effectively sought an advisory opinion this court should not and will not give. Where evidence is excluded by pretrial ruling, as here, proper procedure contemplates an attempt to admit the evidence at trial, and if an objection is sustained, then an offer of proof. **State v. Marshall**, 131 S.W.3d 375, 377 (Mo.App. 2004).

[4] In 2017, § 490.065.2 was amended to track Federal Rules of Evidence 702-705 and the seminal case of **Daubert v. Merrell Dow Pharmaceuticals**, 509 U.S. 579 (1993). **Boss**, 577 S.W.3d at 517; **State ex rel. Gardner v. Wright**, 562 S.W.3d 311, 312 (Mo.App. 2018). Cases boil those trial-court gatekeeping functions "down to [their] essence in a useful three-part test: (1) whether the expert is *qualified*, (2) whether the testimony is *relevant*, and (3) whether the testimony is *reliable*." **Wright**, 562 S.W.3d at 319 (our emphasis).

any such assertions. At most, Voice Expert's CV lists her published writings, which "does not necessarily correlate with reliability[.]" ***Daubert***, 509 U.S. at 593.

Trial courts act as § 490.065.2 gatekeepers to assure expert testimony is not merely relevant, but also reliable. ***Boss***, 577 S.W.3d at 517. Hancock's failure to lay a proper "reliability" foundation further justifies the court's rejection of Voice Expert's opinions.

Finally, even if we found error in excluding this evidence (which we do not), we could not find the prejudice, much less manifest injustice, needed for relief. Voice Expert offered only general opinions unrelated to any specifics of this case, while Victim's recognition of Hancock's voice was only a dab of the largely-undisputed evidence linking Hancock to the robbery:

- The robber wore blue jeans, but otherwise mostly black clothing, a black jacket, black mask, and dark footwear. He wore gloves and, under his mask, blue-tinted glasses.

- He carried a black semi-automatic handgun and a blue and black drawstring bag with white logo printing.

- He demanded no coins, only bills, which Victim put in the bag in sequential order by denomination.

- The robber also had Victim put glass "bubble" smoking pipes and six packs of cigarettes into the bag.

- The robber left and walked north, eventually entering a wooded area near the homeless camp where Hancock had been living recently and still had belongings.

- When police got there, they encountered Hancock wearing a black jacket and blue jeans. Gloves were found on his person after his arrest. He wore dark footwear.

- While fleeing, Hancock dropped blue-tinted glasses.

- Hancock brandished, and then dropped when police fired on him, a black semi-automatic handgun that fit the holster Hancock wore.

- In bushes near where police first sighted Hancock, they found a blue and black drawstring bag with white logo printing. Unopened cigarette packs lay in and around it.

- The bag also contained unused glass bubble pipes, $464 cash sorted sequentially by denomination, a stocking cap, and a black mask that Victim later identified as the one the robber had worn.

The state dwelt on these facts so much that just two sentences of its opening statement, and less than three sentences of its opening summation, cited Victim's voice recognition. Given this lack of emphasis and the swift jury verdicts, and contrasting the state's strong corroborating evidence with Voice Expert's non-specific opinions, Hancock does not convince us of the prejudice he claims, let alone manifest injustice. Point denied.

**Point 2**

Hancock also sought to call gun shop owner Doug Bowen as an expert, questioning him out of the jury's presence as an offer of proof, then urging that his testimony would aid jurors in six areas: (1) gun color; (2) barrel length; (3) ejection-port color; (4) that Hancock's holster could be adjusted to fit different guns; (5) that the gun recovered near Hancock could be dry fired without a firing pin; and (6) what caused the clicking sound when that gun was inserted into that holster. As to 1, 2, 3, and 6, the court found Bowen failed both the qualification and reliability tests (note 4 *supra*). After trial-court prompting, the parties stipulated to issues 4 and 5, mooting Bowen's need to testify to those.

Point 2 challenges exclusions 1, 2, 3, and 6. The first three involved comparing the size, color, and finish of the robber's gun in surveillance videos (and derived still images) with the gun recovered when Hancock was arrested. Bowen admitted he had no training in analyzing guns in surveillance videos, he was unaware of any testing for such competency, he used no specialized equipment to analyze the videos, and he had no standardized procedure or method for making comparisons. He based his opinions on visual observations and common sense. The jury could do the same. Expert testimony was not necessary or helpful in these regards. *See* § 490.065.2(1).

That leaves only Bowen's opinion why the gun "clicked" when put into the holster, a *de minimis* exclusion not prejudicial, and certainly not manifestly unjust, in the context of the whole trial. The parties stipulated that the holster could be adjusted to fit different guns. The defense did not object when a witness holstered the gun to replicate the click for jurors to hear. The defense got the same witness, on cross-examination, to say the click was the sound of pressure or tension holding the gun in place. Based on all that, the defense argued in closing that the holster

5

could fit different size guns and "[d]oesn't lock the gun in place." Hancock does not suggest how Bowen's similar "click" explanation would have changed the verdicts, especially given the strength of the state's evidence summarized in Point 1.

The trial court did not abuse its discretion or plainly err. Point 2 fails. We affirm the judgment and convictions.

DANIEL E. SCOTT, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS