133 S.W.3d 52 (2004)
STATE of Missouri, Respondent,
v.
John D. COUTS, Appellant.
No. SC 85556.
Supreme Court of Missouri, En Banc.
April 27, 2004.
*53 Sarah Weber Patel, Office of the State Public Defender, Kansas City, for Appellant.
Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.
LAURA DENVIR STITH, Judge.
John D. Couts was convicted of second-degree murder, based on his killing of David Beck while shooting into a dwelling, and of armed criminal action, based on his commission of the murder of Mr. Beck. Mr. Couts received two consecutive sentences of life imprisonment. In his only point on appeal, Mr. Couts alleges that his conviction of armed criminal action violates the double jeopardy clause of the United States Constitution because the second-degree murder on which it was predicated was in turn based on his unlawful use of a weapon. This, he alleges, contravened the proscription in section 571.015.4 against using unlawful use of a weapon as the predicate for armed criminal action.[1]
This Court disagrees. State ex rel. Green v. Moore, 131 S.W.3d 803 (Mo. banc 2004) (No. SC 85234, decided April 13, 2004), held that section 571.015.4 prohibits conviction of armed criminal action predicated on second-degree murder where the latter conviction is in turn based on the felony of unlawful use of a weapon by exhibiting it in a threatening manner. Mr. Couts, however, was convicted of unlawful use of a weapon by shooting into a dwelling under section 571.030.1(3), RSMo Supp.1998.[2] This is not one of the types of unlawful use of a weapon listed in section 571.015.4. Therefore, neither section 571.015.4 nor general double jeopardy principles preclude defendant's conviction of armed criminal action predicated on his second-degree murder conviction.[3] Affirmed.
I. FACTUAL AND PROCEDURAL BACKGROUND
Late one evening in November 1999, Joe Green and Kennyboy Beck went to Mr. Couts' house where they joined Mr. Couts, John Camacho, and other unidentified individuals in smoking marijuana and discussing boxing. Having both previously boxed, Mr. Green and Mr. Camacho bragged about their records and debated who was the more skilled fighter. After one and one-half to two hours, Kennyboy went home, where he lived with his father, David Beck, as well as his mother and two siblings. Shortly thereafter, Mr. Green also left and went to the Becks' house. About fifteen minutes after Mr. Green's arrival, Mr. Couts and Mr. Camacho drove up to the Beck home in a Chevrolet Caprice that belonged to Mr. Camacho. Mr. Green and others went outside.
Mr. Green and Mr. Camacho started arguing, and the argument escalated into a physical altercation. Patrick, the victim's brother, intervened when he saw Mr. Camacho attempt to remove a concealed object, which turned out to be a metal file, from his coat. Once the file was confiscated, *54 Mr. Camacho lost interest in fighting, and he and Mr. Couts got back in Mr. Camacho's car and drove away. Mr. Green also left, and everyone else went back inside their homes.
A short time later, Kennyboy peered out the window and saw the Chevrolet Caprice stopped outside. Mr. Couts was sitting in the passenger seat, which was on the side of the car closest to the house. When Kennyboy apprised Mr. Beck that Mr. Couts and Mr. Camacho were outside, Mr. Beck got out of bed and gazed out the living room window. As he did so, Mr. Couts fired several shots at the house. Two bullets struck Mr. Beck, one hitting his left hip and one entering his abdomen. He subsequently died of internal bleeding caused by the abdominal wound.
The Becks made statements to police and identified Mr. Couts and Mr. Camacho, who were eventually arrested. The State indicted Mr. Couts for second-degree murder, predicated on the felony of unlawful use of a weapon by shooting into a dwelling, and armed criminal action, predicated, in turn, on the murder.[4] The jury returned guilty verdicts on both counts, and, after finding him to be a prior and persistent offender, the trial court sentenced Mr. Couts to two consecutive sentences of life imprisonment.
Mr. Couts appealed. After opinion by the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10.
II. STANDARD OF REVIEW
"[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings." State v. Wickizer, 583 S.W.2d 519, 523 (Mo. banc 1979). Having admittedly failed to raise his double jeopardy claim until his appeal, Mr. Couts now asks this Court to review the armed criminal action conviction and sentence for plain error. Under plain error review, the defendant must prove the error so substantially affected his rights that "manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. See also, Deck v. State, 68 S.W.3d 418, 424 (Mo. banc 2002).
III. DOUBLE JEOPARDY
Mr. Couts contends that the trial court plainly erred and violated his Fifth Amendment protection against double jeopardy by convicting and sentencing him for armed criminal action. As this Court recently held in State ex rel. Green v. Moore:
Where ... a double jeopardy claim is based on allegedly improper cumulative punishments for the same offense, the central issue becomes legislative intent.... "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."
Green, 131 S.W.3d at 806-807 (internal citations omitted). As in Green, here Mr. Couts does not claim that his convictions are barred by Missouri's general double jeopardy rules set out in section 556.041, but that cumulative punishments for his conduct are barred by Missouri's armed *55 criminal action statute, section 571.015, which states, in relevant part:
1. Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action ....
....
4. The provisions of this section shall not apply to the felonies defined in sections 564.590, 564.610, 564.620, 564.630, and 564.640, RSMo.
Sec. 571.015 (emphasis added).
As just quoted, section 564.610 is one of the sections listed in section 571.015.4 and so is one of the sections that lists felonies on which an armed criminal action charge cannot be based. As explained in Green, 131 S.W.3d at 807 n.9, when section 571.015.4 was enacted in 1977, section 564.610 prohibited exhibiting deadly weapons in the presence of one or more persons in a threatening manner, the conduct with which Mr. Green was charged. Therefore, as the State conceded, section 571.015.4 barred charging Mr. Green with armed criminal action based on his exhibition of a deadly weapon in a threatening manner. This Court determined that, because Mr. Green's second-degree murder conviction in turn was based on his commission of the felony of exhibiting a weapon in a threatening manner, section 571.015.4 necessarily also barred conviction of armed criminal action, as the second-degree murder could not be separated from the unlawful use of a weapon on which it was based.
This does not provide a basis for relief for Mr. Couts, however. Neither the type of unlawful use of a weapon he committedshooting into a dwellingnor any predecessor to such unlawful use of a weapon is listed as one of the felonies that cannot form the basis of an armed criminal action charge. Rather, the crime of shooting into a dwelling was contained in section 562.070 in 1977, when section 571.015.4 was enacted.[5] Section 562.070 was not among the statutes listed in section 571.015.4.
Mr. Couts argues that, even if that were true in 1977, unlawful use of a weapon by shooting into a dwelling is now listed in section 571.030, as are the other unlawful use of a weapon offenses that various courts have held section 571.015.4 prohibits from being used as predicates for armed criminal action, citing Ivy v. State, 81 S.W.3d 199, 201, 206-07 (Mo.App. W.D. 2002); State v. Davis, 849 S.W.2d 34, 36, 44 (Mo.App. W.D.1993); State v. McKee, 826 S.W.2d 26, 27 (Mo.App. W.D.1992); State v. Gottsman, 796 S.W.2d 27, 27, 30 n. 5 (Mo.App. W.D.1990); State v. King, 748 S.W.2d 47, 50 n. 1 (Mo.App. E.D.1988). Therefore, he argues, shooting into a dwelling also should not be permitted to form the predicate for an armed criminal action charge.
The cited cases are not applicable here. Each involved a type of unlawful use of a weapon that was originally listed in section *56 564.610 when section 571.015.4 was enacted in 1977 and that is now listed in section 571.030.1(4), as was true in Green. Mr. Couts' offense, by contrast, arose under what was originally section 562.070, which, as noted, is not listed in section 571.015.4. The cited cases are simply not on point.[6]
Mr. Couts also argues that, even if his crime is not among those in the five statutes enumerated in section 571.015.4 or their successors, to bar only certain unlawful uses of a weapon from providing the predicate for an armed criminal action charge is confusing, and this Court should bar all types of unlawful uses of a weapon from forming the predicate for armed criminal action. While Mr. Couts may be correct that it would be simpler to apply section 571.015.4's prohibitions if they applied to all forms of unlawful use of a weapon, that is a matter for the legislature, not for this Court. Double jeopardy principles are not violated where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the `same' conduct." Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).
Subsection 1 of section 571.015 specifically states the legislature's intent that a person can be convicted of armed criminal action for commission of any felony through the use of a dangerous weapon other than those specifically listed in section 571.015.4. Sec. 571.015.1, 4. This intent is further elucidated by section 571.017, which states: "Nothing contained in any other provision of law, except as provided in subsection 4 of section 571.015, shall prevent imposition of sentences for both armed criminal action and the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Sec. 571.017 (emphasis added).
Here, Mr. Couts' armed criminal action conviction was predicated on second-degree murder, which was, in turn, predicted on the felony of unlawful use of a weapon by shooting into a dwelling. The legislature did not intend to preclude conviction of both armed criminal action and unlawful use of a weapon by shooting into a dwelling and, in fact, specifically intended to permit conviction and sentence for both offenses. Thus, although the essence of both his murder and armed criminal action convictions was his commission of unlawful use of a weapon by shooting into a dwelling, because section 571.015.4 does not enjoin cumulative punishments for armed criminal action and this particular form of unlawful use of a weapon, his armed criminal action conviction does not violate either section 571.015.4 or general double jeopardy principles.[7]
All concur.
NOTES
[1] Although Mr. Couts' point relied on also states that his right to due process was violated, he provides no legal support for this argument and focuses solely on double jeopardy. See, e.g., Thummel v. King, 570 S.W.2d 679, 687 (Mo. banc 1978) (stating that, "[i]f the point is one for which precedent is appropriate and available, it is the obligation of appellant to cite it if he expects to prevail").
[2] Subdivision (3) of section 571.030.1, RSMo Supp.1998, was in effect at the time Mr. Couts shot and killed Mr. Beck. It has remained unchanged in subsequent revisions.
[3] All statutory references are to RSMo 2000, unless otherwise indicated.
[4] Mr. Camacho entered a plea bargain in which the original charge of murder in the second degree would be reduced to voluntary manslaughter and the armed criminal action charge would be dropped in exchange for his guilty pleas to manslaughter and a separate drug possession charge and his testimony against Mr. Couts.
[5] Unlawful use of a weapon by shooting into a dwelling was codified at section 562.070, RSMo 1969, when section 571.015 was enacted in 1977 and was subsequently transferred to section 571.030 in 1978. See sec. 562.070, RSMo 1969; sec. 571.030, RSMo 1978. As of 1981, multiple offenses pertaining to the unlawful use of a weapon were combined in section 571.030.1, and shooting into a dwelling was recodified at section 571.030.1(3), which read: "Discharges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor vehicle as defined in section 302.010, RSMo, or any building or structure used for the assembling of people." Sec. 571.030.1(3), RSMo Supp.1981. This language was in effect in 1999 when Mr. Couts' crimes occurred, and it remains the same today. See sec. 571.030.1(3), RSMo Supp. 1998; sec. 571.030.1(3), RSMo Supp.2003.
[6] Insofar as dicta in these cases goes beyond their facts and makes generalizations suggesting that all types of unlawful use of a weapon offenses found in section 571.030 are barred from use as predicates for armed criminal action, such dicta is to be ignored.
[7] The Court also rejects Mr. Couts' claim that his conviction and sentence for armed criminal action violated his right to be free of double jeopardy under article I, section 19 of the Missouri Constitution, which states, "nor shall any person be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury." Mo. Const. art. I, sec. 19. This claim fails as Mr. Couts was never acquitted by a jury. See State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992) (stating that, "[s]ince appellant was never acquitted by a jury, the double jeopardy clause of the Missouri Constitution is without application ... [, and a]ny double jeopardy claim ... would, therefore, derive from the Fifth Amendment to the United States Constitution, which ... is made applicable to the states through the Fourteenth Amendment").