

# In the
# Missouri Court of Appeals
## Western District

DESHAY TROTTER,

              **Appellant,**

v.

STATE OF MISSOURI,

              **Respondent.**

WD76472

OPINION FILED:

June 10, 2014

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Edith Messina, Judge**

**Before Division Four: James Edward Welsh, C.J.,
Lisa White Hardwick, J., and Kevin Harrell, Sp. J.**

Deshay Trotter appeals the circuit court's judgment denying his Rule 29.15 motion for post-conviction relief in which he sought to set aside one of his convictions for armed criminal action on the basis of ineffective assistance of trial and appellate counsel. We affirm.

## Background

The State of Missouri charged Trotter by information in lieu of indictment with fourteen felony counts: one count of second-degree murder (§ 565.021),[1] two counts of unlawful use of a weapon ( § 571.030, RSMo Cum. Supp. 2007), four counts of first-degree assault (§ 565.050), and seven counts of armed criminal action ("ACA") (§ 571.015).

---

[1]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, unless otherwise noted.

The evidence presented at trial established that in November 2007, Trotter and co-defendants Stephan Sawyer, Dion Young, and DeAngelo Blair traveled in Sawyer's vehicle to Lawrence, Kansas. They were armed with a .45 caliber handgun and a rifle. While in Lawrence, Trotter's group became involved in an altercation with another group of individuals at a nightclub. Police arrived, and Young was handcuffed and detained. Meanwhile, Trotter, Blair, and Sawyer returned to Sawyer's car, where they retrieved the two weapons. When released, Young joined the others in Sawyer's vehicle, and they set out to pursue the rival group who had left in two separate vehicles. Trotter's party was accompanied in the pursuit by a second group of individuals in a black SUV. Unable to find the rival group in Lawrence, they headed toward Kansas City. Trotter's group caught up to their victims shortly after crossing back into Missouri and began firing into the rear of the victims' vehicles. Additional shots were fired at the victims' vehicles from the black SUV.

A police officer witnessed the shooting and testified that gunfire came from the rear passenger-side seat, where Trotter was sitting. The officer stopped to attend to the victims, whose vehicles had collided and come to a stop. He discovered that one of the victims, Dominic Bradley, had no pulse. Bradley was shot in the back, and the bullet had caused massive internal bleeding. Three other victims suffered non-fatal gunshot wounds. The officer found no guns in the victims' cars or on the ground beside them. A few minutes after receiving a dispatch about the shooting, another officer spotted Sawyer's car. Following a chase, officers apprehended all four men and recovered the two weapons they had discarded during the police pursuit. Firearms evidence taken from the crime scene showed that both had been fired at the victims' vehicles. As a result of the shots fired by Trotter's group, Bradley died.

2

The second-degree murder charge in Count 1 was submitted as a felony murder, with the underlying felony being the unlawful use of a weapon (charged in Count 3). (Both counts had a separate count of ACA associated to it.) The jury found Trotter guilty of second-degree murder, two counts of unlawful use of a weapon, three counts of first-degree assault, and six associated counts of ACA. The jury acquitted him of first-degree assault and ACA as to one occupant in the victims' vehicles who did not suffer a gunshot wound. The court sentenced Trotter to ten years for second-degree murder, fifteen years on each unlawful use of a weapon count, five years on each first-degree assault count, and three years on each ACA conviction. The consecutive and concurrent nature of the sentences resulted in a total of eighteen years.[2]

Trotter's appellate counsel raised two issues on appeal, neither of which involved a double jeopardy violation. This court rejected both claims and affirmed Trotter's convictions and sentences in a *per curiam* order, *State v. Trotter*, 305 S.W.3d 506 (Mo. App. 2010).

Trotter filed a timely *pro se* Rule 29.15 motion for post-conviction relief, and appointed counsel filed an amended motion. The amended motion alleged that both trial and appellate counsel were ineffective in failing to challenge his ACA conviction either as to Count 2 or Count 4 on the basis of double jeopardy because both were associated with commission of the unlawful use of a weapon offense in Count 3. Following an evidentiary hearing, the circuit court denied Trotter's claims for relief.

## Discussion

In his sole point on appeal, Trotter argues that the circuit court clearly erred in denying his claims that (1) trial counsel was ineffective in failing to object to or move to dismiss his

---

[2]The court ordered the sentences on Counts 1 and 2 (the murder charge and its associated ACA) to run consecutively; Count 3 (unlawful use of a weapon) to run concurrently with Count 1; and Count 4 (the associated ACA) to run consecutively to Count 3. All other sentences were ordered to run concurrently with each other.

convictions and sentences for ACA in Counts 2 and 4 on the basis that they violated double jeopardy, and (2) appellate counsel was ineffective in failing to challenge the convictions and sentences on the same basis on appeal. Trotter argues that, absent the incompetence of trial and appellate counsel in this regard, a reasonable probability exists that the outcome of his trial or appellate proceedings would have been different.

It is the movant's burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. Rule 29.15(i). To prevail on such a claim, the movant must establish both (1) that his attorney's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) that his attorney's failures prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy *Strickland*'s performance prong, a movant must overcome the strong presumption that counsel's actions were reasonable and effective and that any challenged action was based on sound trial strategy. *Tisius v. State*, 183 S.W.3d 207, 211 (Mo. banc 2006). To prove prejudice, the movant must show that, "but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." *Id*. at 212. A claim of ineffective assistance of appellate counsel is reviewed under essentially the same standard. *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005). The "movant is expected to show both a breach of duty and resulting prejudice." *Id*. The alleged error "must have been sufficiently serious to create a reasonable probability that, if it was raised, the outcome of the appeal would have been different." *Tisius*, 183 S.W.3d at 215.

At the hearing on Trotter's motion, trial counsel testified that he did not object based on double jeopardy because he "didn't believe" there was "any valid basis to do so." He could not remember doing any specific research on the issue, but stated that his "understanding of the ACA

4

statute was [that] they can tie an ACA to each felony offense that they charge." Appellate counsel testified that she did not raise the double jeopardy issue because she did not consider it. She stated that she would raise any issue that "needs to be raised."

The circuit court rejected this claim on the basis that both ACA convictions were authorized by law and because counsel is not ineffective or unreasonable for failing to raise an issue "that is not legally supported." The court explained:

> The State's theory of prosecution involved two separate acts. First, the defendants in the criminal case fired upon the victim's vehicle, in violation of Section 571.030, RSMo. Secondly, this action resulted in the death of Dominic Bradley in violation of Section 565.021, RSMo. Each of these offenses was committed through the use of a deadly weapon, in violation of 571.015.1, RSMo. Missouri's double jeopardy protections are statutorily codified in Section 556.041, which states that "when the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense."

Trotter was charged in Count I with second-degree felony murder, in violation of section 565.021, based on his perpetration of "unlawful use of a weapon."[3] The unlawful use of a weapon offense referred to in Count 1 was charged in Count 3, which alleged that Trotter committed this offense by discharging a firearm at a motor vehicle (§ 571.030.1(9)).[4] He was charged in Count 2 with ACA in connection with the offense in Count 1, and he was charged with ACA in Count 4, in connection with the offense in Count 3. *See* § 571.015.1.[5] Trotter

---

[3]Section 565.021.1(2) provides that "[a] person commits the crime of murder in the second degree if he: Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony . . . , another person is killed as a result [thereof.]"

[4]Under section 571.030.1(9), RSMo Cum. Supp. 2007, a person commits the crime of unlawful use of a weapon if he knowingly: "Discharges or shoots a firearm at or from a motor vehicle . . . , discharges or shoots a firearm at any person, or at any other motor vehicle, or at any building or habitable structure, unless the person was lawfully acting in self-defense[.]"

[5]Section 571.015.1 provides in relevant part that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action."

claims that double jeopardy arises because the felony-murder in Count 1 is predicated on the commission of unlawful use of a weapon in Count 3, the ACA in Count 2 is actually connected to the commission of unlawful use of a weapon in Count 3, and the ACA in Count 4 is also connected to that same offense of unlawful use of a weapon in Count 3. In other words, he argues that Counts 2 and 4 are not separate offenses established by the same set of facts so as to authorize separate punishments under section 556.041,[6] but are, instead, the same offense because, in both cases, the jury must find that the unlawful use of a weapon offense charged in Count 3 is the offense that is being committed with the deadly weapon.

"The Double Jeopardy Clause of the Fifth Amendment prevents a defendant from being subjected to multiple punishments for the same offense."[7] *State v. Prince*, 311 S.W.3d 327, 330-31 (Mo. App. 2010). Multiple punishments are allowed, however, if the defendant has "in law and fact committed separate crimes." *State v. Barraza*, 238 S.W.3d 187, 193 (Mo. App. 2007) (quoting *State v. Sanchez*, 186 S.W.3d 260, 267 (Mo. banc 2006)). As explained by the United States Supreme Court, double jeopardy principles are not violated where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct." *State v. Couts*, 133 S.W.3d 52, 56 (Mo. banc 2004) (quoting *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983)). Here, Trotter claims a double jeopardy violation based on multiple punishments; thus, analysis of this claim is "limited to determining whether cumulative punishments were intended by the legislature." *Prince*, 311 S.W.3d at 331 (quoting *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992)).

---

[6]Under section 556.041, "[w]hen the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense."

[7]"The Fifth Amendment is made applicable to the states through the Fourteenth Amendment." *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992) (citing *Benton v. Maryland*, 395 U.S. 784, 794 (1969)).

The statute proscribing second-degree felony murder states that "the punishment for second degree murder ***shall be in addition to*** the punishment for commission of a related felony or attempted felony, other than murder or manslaughter." § 565.021.2 (emphasis added). The ACA statute expressly provides that the punishment for armed criminal action "***shall be in addition to*** any punishment provided by law for the [underlying] crime committed." § 571.015.1 (emphasis added). As explained in *Couts*, section 571.015.1 "specifically states the legislature's intent that a person can be convicted of armed criminal action for commission of any felony through the use of a dangerous weapon other than those specifically listed in section 571.015.4."[8] 133 S.W.3d at 56 (citing § 571.015.1, .4). The Court observed that further evidence of this intent can be found in section 571.017, which states that "[n]othing contained in any other provision of law, except as provided in subsection 4 of section 571.015, shall prevent imposition of sentences for both armed criminal action and the [underlying] crime committed." *Id*.

In examining the interrelationship between ACA and its underlying felony, this court explained in *State v. Hyman* that "[a]rmed criminal action may be based on any felony not specifically excluded" under the statute. 37 S.W.3d 384, 391 (Mo. App. 2001). "Each time a dangerous instrument is used in effectuating a felony, a separate crime of armed criminal action occurs," and that crime "carries a separate, distinct, and additional punishment." *Id.* Here, Trotter was charged with and convicted of two distinct crimes to which a charge of ACA was applicable: unlawful use of a weapon and second-degree felony murder. Because the legislature specifically intended cumulative punishments for ACA and the underlying offenses of felony

---

[8]None of the crimes at issue here are included in 571.015.4 as an offense for which cumulative punishment is prohibited by the legislature, nor do they equate with any of the now repealed statutory offenses enumerated in subsection .4 (§§ 564.590, 564.610, 564.620, 564.630, and 564.640). *See Prince*, 311 S.W.3d at 332-33.

murder and unlawful use of a weapon, Trotter's conviction on the two ACA counts did not offend double jeopardy.

Trotter cites no authority that would support his claim that this was a clear violation of double jeopardy which would have been recognized and raised by competent trial or appellate counsel and would have resulted in reversal had it been asserted. As noted by the circuit court, the opposite is true. Existing caselaw indicates that there was no basis for such a claim. In *Couts*, 133 S.W.3d at 53, our Supreme Court rejected the appellant's claim that his ACA conviction violated double jeopardy because the second-degree murder on which it was predicated was based on his unlawful use of a weapon by shooting into a dwelling (in violation of § 571.030.1(3)). The Court held that "because section 571.015.4 does not enjoin cumulative punishments for armed criminal action and this particular form of unlawful use of a weapon, his armed criminal action conviction does not violate either section 571.015.4 or general double jeopardy principles." *Id*. at 56.

Based on the same reasoning, the courts of this state have held that double jeopardy also is not violated by convictions for both unlawful use of a weapon under section 571.030.1(9) and for a felony murder charge predicated on that crime. *See Prince*, 311 S.W.3d at 331. Nor is double jeopardy violated by convictions for unlawful use of a weapon under section 571.030.1(9) and for armed criminal action predicated on that offense. *Id*. at 332-35; *see also Brown v. State*, 343 S.W.3d 760, 761 (Mo. App. 2011). As explained in *Prince*, section 571.030.1(9) is not expressly included in 571.015.4 as an offense for which cumulative punishment is prohibited by the legislature, nor does it equate with any of the now repealed statutory offenses enumerated in section 571.015.4. 311 S.W.3d at 332-33. Thus, the existing

caselaw would not have indicated to competent counsel that Trotter's convictions for unlawful use of a weapon, felony murder, and two associated counts of ACA violated double jeopardy.

Counsel cannot be faulted for failing to raise a meritless issue either at trial or on appeal. *Bolden v. State*, 413 S.W.3d 658, 664 (Mo. App. 2013). We affirm the circuit court's judgment.

           /s/JAMES EDWARD WELSH
           James Edward Welsh, Chief Judge

All concur.