In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE
STATE OF MISSOURI, ) No. ED108691
 )
 Appellant, )
 ) Appeal from the Circuit Court
 ) of the City of St. Louis
 vs. ) Cause No. 1922-CR01066-01
 )
GARY ANDREWS, JR., ) Honorable David C. Mason
 )
 Respondent. ) Filed: February 23. 2021

 OPINION

 I. Introduction

 The State of Missouri appeals the trial court’s order granting Gary Andrews’s

(“Defendant”) motion to dismiss the count charging him with possession of a controlled

substance on double jeopardy grounds. The court found that the State was barred from

continuing to prosecute that count after Defendant pleaded guilty to another count in the same

indictment, charging him with unlawful use of a weapon by possessing a firearm while also in

possession of a controlled substance. The State raises two points on appeal. In Point I, the State

contends it was premature to dismiss the possession count on double jeopardy grounds because

Defendant had not yet been convicted of and subject to sentencing on that count. In Point II, the

State contends there was no double jeopardy violation because these were two separate offenses

that the legislature intended to be punished cumulatively. We affirm.

 1
 II. Factual and Procedural Background

 Defendant was charged in a single indictment with multiple counts stemming from the

same incident. Count I charged him with possession of a controlled substance (Fentanyl) under §

579.015,1 Count II charged him with unlawful use of a weapon by possessing a firearm while

also in possession of the same controlled substance (Fentanyl) under § 571.030(11), and Counts

III through V charged him with other offenses not relevant to this appeal. At Defendant’s

request, the matter was set for a plea hearing. Prior to that hearing, Defendant filed a motion to

dismiss, arguing that possession of a controlled substance (“possession”) is an included offense

of unlawful use of a weapon by possessing a firearm while also in possession of a controlled

substance (“UUW-possession”) and, therefore, Counts I and II were the “same offense” for

double jeopardy purposes. Defendant contended the State was precluded from prosecuting and

cumulatively punishing him for both of those offenses. He requested that the trial court either

dismiss Count I or require the State to elect to pursue only Count I or only Count II.

 At the plea hearing, the trial court first heard arguments on the motion to dismiss.

Defendant stated that he did not intend to plead to both Counts I and II because they were the

“same offense” for double jeopardy purposes. The parties debated whether possession was

included in UUW-possession, and the trial court indicated its belief that there would be a double

jeopardy problem if Defendant pleaded to both and warned that Defendant could not be

sentenced on both. The trial court suggested the State could elect which one to impose

punishment on at sentencing or it could elect before the plea hearing to proceed with just one of

the offenses, rather than let Defendant decide. The State maintained that these were separate

offenses and indicated it would proceed with all counts as charged. At that point, Defendant said

1
 All statutory references are to Mo. Rev. Stat. Cum. Supp. 2019, unless otherwise noted.

 2
he would plead guilty only to the UUW-possession count and the other unrelated charges and

leave the possession count “open.” The State did not object to disposing of these offenses

separately or to Defendant’s particular choice to plead only to UUW-possession, nor did it seek

to withdraw the plea agreement it had entered with Defendant, which was premised on him

pleading to all the charges in the indictment.

 The trial court then proceeded with the plea hearing and accepted Defendant’s pleas to

Counts II through V, also without any objection from the State, and sentencing followed directly

thereafter. The State asked the trial court to sentence Defendant on Count I, which was denied

because he had not pleaded to that count, but the State did not object to sentencing Defendant on

the UUW-possession count. In fact, the State indicated it would lower its sentencing

recommendation from five to four years imprisonment since Defendant did not plead to the

possession count, as originally contemplated in the plea agreement. The trial court sentenced him

to a total of four years in prison on Counts II to V, the execution of which was suspended, and

Defendant was placed on probation. Count I remained pending.

 Thereafter, Defendant refiled the motion to dismiss Count I on double jeopardy grounds,

pointing out that because he had been convicted by plea of guilty on the greater offense of

UUW-possession, he could not be prosecuted for the included offense of possession, much less

punished for that offense a second time. The State filed a memorandum in opposition, arguing

the legislature intended these to be separate offenses subject to cumulative punishment and thus

there was no double jeopardy problem. It did not argue that dismissal would be premature. The

court granted Defendant’s motion and dismissed Count I. This appeal follows.

 III. Standard of Review

 3
 We review double jeopardy claims de novo. State v. Daws, 311 S.W.3d 806, 808 (Mo. banc

2010).

 IV. Discussion

 The double jeopardy clause of the Fifth Amendment to the United States Constitution

guarantees that no person shall “be subject for the same offense to be twice put in jeopardy of

life and limb.” U.S. CONST. amend. V. This clause provides two distinct protections for

criminal defendants: (1) protection from successive prosecutions for the same offense after either

an acquittal or a conviction and (2) protection from multiple punishments for the same offense.

Daws, 311 S.W.3d at 808. The double jeopardy analysis is the same whether the protection

sought is from successive prosecution or multiple punishment. State v. Blackman, 968 S.W.2d

138, 140 (Mo. banc 1998); see also State v. Flenoy, 968 S.W.2d 141, 144 (Mo. banc 1998).

Although the substantive analysis is the same, the distinction between the successive prosecution

and multiple punishment protection is important because “it implicates at what stage in a

criminal proceeding a defendant can raise a double jeopardy challenge.” State v. Thompson, 581

S.W.3d 632, 636 (Mo. App. W.D. 2019). Thus, the State’s first point on appeal asserts that

dismissal of Count I was premature, construing Defendant’s challenge as one based on the

protection against multiple punishments. We will return to this point after addressing the

substantive double jeopardy analysis required by the State’s second point on appeal, in which the

State contends these were two separate offenses that the legislature intended to be punished

cumulatively.

 A. Merits of Double Jeopardy Challenge

 The essential question in any double jeopardy analysis is “whether there is clear

legislative intent to punish a defendant cumulatively.” Blackman, 968 S.W.2d at 140 (relying on

 4
Missouri v. Hunter, 459 U.S. 359, 367 (1983) and its progeny). To determine legislative intent,

we must first examine whether the particular statutes at issue “specifically authorize cumulative

punishment.” State v. Horton, 325 S.W.3d 474, 478 (Mo. App. E.D. 2010). If those statutes are

silent on the issue of cumulative punishment, then we turn to § 556.041, which expresses the

legislature’s general intent to impose cumulative punishments unless the offenses fall into one of

the exceptions therein.2 Id.; see also State v. McTush, 827 S.W.2d 184, 187–88 (Mo. banc 1992).

The trial court here concluded that the first exception, for included offenses as defined in §

556.046.1(1), applies in this case. An offense is “included” when it “is established by proof of

the same or less than all the facts required to establish the commission of the offense charged.” §

556.046.1(1).3 Section 556.046.1(1) essentially codifies the same elements test announced in

Blockburger v. United States, 284 U.S. 299, 304 (1932). See McTush, 827 S.W.2d at 188.

 Specific Authorization for Cumulative Punishment

 Our first task in determining legislative intent is to examine §§ 579.015 and 571.030.1(3)

for authorization of cumulative punishments. See Blackman, 968 S.W.3d at 140; Horton, 325

S.W.3d at 478; Hunter, 459 U.S. at 367. The State argues that “the plain language of the statute

for unlawful use of a weapon indicates that the punishment is intended to be in addition to the

2
 Section 556.041 provides:
 When the same conduct of a person may establish the commission of more than one offense he or
 she may be prosecuted for each such offense. Such person may not, however, be convicted of more
 than one offense if:
 (1) One offense is included in the other, as defined in section 556.046; or
 (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
 (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally
 and the other to prohibit a specific instance of such conduct; or
 (4) The offense is defined as a continuing course of conduct and the person's course of conduct was
 uninterrupted, unless the law provides that specific periods of such conduct constitute separate
 offenses.

3
 An offense is also “included” if it is “specifically denominated by statute as a lesser degree of the offense charged”
or “consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.” §
556.046.1(2) and (3). Defendant does not argue that either of these definitions are applicable here.

 5
punishment for the crime or conviction of possession of a controlled substance.” We disagree.

The statutes at issue here make no mention of cumulative punishment: § 579.015.1 states that

“[a] person commits the offense of possession of a controlled substance if he or she knowingly

possesses a controlled substance,” and § 571.030.1(11) states that “[a] person commits the

offense of unlawful use of weapons . . . if he or she knowingly . . . [p]ossesses a firearm while

also knowingly in possession of a controlled substance that is sufficient for a felony violation of

section 579.015.” The State argues that because the legislature was obviously aware that

possession of controlled substances was already a crime, its failure to expressly prohibit

additional punishment for UUW-possession is indicative of its intent to permit multiple

punishment. The State relies on the phrase “while also” in § 571.030.1(11), arguing that is

synonymous with “in addition to.” We agree that either phrase when used in reference to

punishment would constitute an express authorization of multiple punishment. See, e.g., State v.

Dudley, 303 S.W.3d 203, 208 (Mo. App. W.D. 2010). But in § 571.030.1(11), “while also” is

used only in reference to guilt: one commits the offense when he possesses a firearm “while

also” committing an offense under § 579.015.

 The fact that guilt for one offense is predicated on commission of another offense is not

itself sufficient indication of legislative intent to authorize cumulative punishment. Our courts’

interpretation of the felony-murder statute and the armed criminal action statute--both of which

are also crimes for which guilt is predicated on the commission of another crime--is instructive.

Since its enactment in 1976, the armed criminal action statute has always contained explicit

language providing that punishment for armed criminal action “shall be in addition to” any

 6
punishment for the predicate crime committed with a weapon. See § 571.015.4 The Supreme

Court of Missouri has concluded this language “clearly and unambiguously” expressed the

legislature’s “unmistakable intent” to permit multiple punishments for armed criminal action and

the predicate crime. Sours v. State, 603 S.W.2d 592, 598–99 (Mo. banc 1980) (citing § 559.225

Mo. Rev. Stat. Cum. Supp. 1976).

 The felony-murder statute, on the other hand, did not always contain a specific

authorization of cumulative punishment. Prior to 1984, the felony-murder statute stated only that

a killing “committed in the perpetration of or in the attempt to perpetrate” certain specified other

offenses was first-degree murder. See § 565.003 Mo. Rev. Stat. Cum. Supp. 1977.5 Like the

statutes before us now, the felony-murder statute at that time made no mention of cumulative

punishment. The Supreme Court of Missouri concluded that the statute did “not contain a

legislative intent or directive that a defendant may be separately punished” and “it cannot be

demonstrated that the Missouri legislature intended to allow a court to separately punish a

defendant both for felony-murder and the underlying felony.” State v. Olds, 603 S.W.2d 501,

509-10 (Mo. banc 1980).6 This Court pointed out that this version of the felony-murder statute

did not contain language similar to what was used in the armed criminal action statute and

concluded that “legislative silence can hardly be said to be evidence of any legislative intent or

directive to impose double punishment.” State v. Evans, 660 S.W.2d 433, 435 (Mo. App. E.D.

4
 Before armed criminal action was itself a felony offense, the use of a weapon during commission of a felony
simply enhanced the defendant’s sentence. See State v. Evans, 455 S.W.3d 452, 458 (Mo. App. E.D. 2014)
(discussing legislative history of armed criminal action).

5
 Section 565.003 read as follows: “Any person who unlawfully kills another human being without a premeditated
intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was
committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping.”

6
 Olds was abrogated on other grounds by State v. Clark, 652 S.W.2d 123 (Mo. banc 1983), and superseded by the
later version of the felony-murder statute, as recognized in Jones v. Thomas, 491 U.S. 376, 379 (1989).

 7
1983). In 1984, the legislature rewrote the felony-murder statute and added the exact same

language it had used in the armed criminal action statute, expressly stating that punishment for

felony-murder “shall be in addition to the punishment for commission of a related felony or

attempted felony, other than murder or manslaughter.” § 565.021.1(2). Our courts have

repeatedly recognized that this language specifically authorizes cumulative punishment for

felony-murder and the underlying felony. See, e.g., State v. Coody, 867 S.W.2d 661, 666 (Mo.

App. S.D. 1993); Dudley, 303 S.W.3d at 208. In other words, until the statute included language

affirmatively permitting multiple punishments, our courts could not find a clear legislative intent

solely from the fact that guilt for felony-murder was predicated on the commission of another

crime.7

 Sections 579.015 and 571.030.1(3) contain no language relating to multiple punishments.

We cannot read silence on the matter of punishment as a directive to permit cumulative

punishment for these two crimes. See Evans, 660 S.W.2d at 435. In fact, if anything, silence on

the matter in the face of the above jurisprudence regarding how to signal legislative intent to

impose cumulative punishment--about which we presume the legislature was aware--indicates a

legislative intent not to authorize multiple punishment. See generally State v. Prince, 311 S.W.3d

327, 335 (Mo. App. W.D. 2010); see also State v. Wright, 484 S.W.3d 817, 821 (Mo. App. E.D.

2015). In other words, the legislature knew when it enacted § 571.030.1(11) in 2014 that our

courts would be looking for some language like that used in the felony-murder and armed

criminal action statutes as an indication that it intended to cumulatively punish UUW-possession

7
 The State cites an Arkansas case for the opposite proposition. In Rowbottom v. State, the Supreme Court of
Arkansas held that the legislature’s express reference to the drug possession statute in the statute criminalizing
simultaneous drug and gun possession was itself a sufficient indication that the legislature intended punishment for
those two crimes to be cumulative. 13 S.W.3d 904, 908 (Ark. 2000). That case is not binding precedent in Missouri,
nor is it persuasive authority given that our courts require a more explicit reference to punishment to signal
legislative intent regarding cumulative punishment.

 8
and possession; it knew that simply predicating guilt for one offense on the commission of

another would not signal a clear intent to authorize cumulative punishment for those crimes; and

it knew that its silence on the matter of punishment would not be construed as authorization of

multiple punishments. Yet, it made no mention of cumulative punishment.

 For the same reason, we find no merit in the State’s argument that the legislature’s

classification of these crimes is indicative of its intent that they be cumulatively punished. The

State argues that when the legislature criminalized the simultaneous possession of guns and

drugs and classified that offense as Class E felony--which is lower than the Class D felony of

possessing only drugs--it did so with the intention that the offender would be punished for both

crimes and, thereby, subject to both ranges of punishment. That way, the argument goes,

ultimately the person with both drugs and guns will rightly be subject to more punishment than a

person with only drugs. Any other interpretation of the legislature's intent, the State insists,

would lead to absurd results the legislature did not intend, namely “rewarding” someone with

both drugs and guns by subjecting them to a maximum sentence of only four years in prison,

while someone with drugs alone is subject to a maximum sentence of seven years in prison. The

State claims our interpretation also renders § 571.030.1(3) useless, asserting that no prosecutor

would charge a person with both drugs and guns under that statute that requires more proof, but

carries a lighter sentence. We disagree that classifying the seemingly more serious offense lower

than its predicate crime is any indication--much less the requisite clear indication--of the

legislature’s intent to specifically authorize cumulative punishment for those crimes. Moreover,

the legislature would have been aware that such a surreptitious approach to addressing

 9
cumulative punishment would not be consistent with the above jurisprudence regarding how to

clearly indicate that intent.8

 The State is certainly correct that the legislature is free to use whatever language it wants

to signal its intent. We do not mean to suggest the only language that could clearly indicate a

legislative intent to specifically authorize cumulative punishment is that used in the armed

criminal action and felony-murder statutes. But in §§ 579.015 and 571.030.1(11), there is no

language that can reasonably be said to clearly indicate such an intent. If that was, in fact, the

legislature’s intent, then it is free to amend the statute to clearly say so. But this Court is not at

liberty to engage in that legislative function and we must apply the statute as written. See

generally State v. Jones, 596 S.W.3d 168, 176–77 (Mo. App. E.D. 2020). As written, the specific

statutes under which Defendant was charged are silent on the matter of cumulative punishment.

Thus, we turn to § 556.041, which expresses the legislature’s general intent that a person may

not be convicted of more than one offense if “one offense is included in the other, as defined in

section 556.046.” § 556.041(1). The only relevant definition here is set out in § 556.046.1(1),

most commonly known as the “same elements” or Blockburger test.

 Same Elements Test

 Application of the same elements test is straightforward: one offense is “included” in

another when it “is established by proof of the same or less than all the facts required to

establish” the other offense. § 556.046.1(1); see also McTush, 827 S.W.2d at 187–88. Under this

8
 We note that at the time the General Assembly added subsection (11) to § 571.030.1, it did not actually provide
any felony classification for that offense. See § 571.030 Mo. Rev. Stat. Cum. Supp. 2014. Therefore, it is not at all
clear what sentencing range the legislature intended for UUW-possession at that point, much less whether it
intended for it to be higher or lower than the sentencing range for possession. The legislature corrected this apparent
oversight in 2016, at which point it made subsection (11) a Class E felony. See § 571.030.8(1). Class E felonies are
punishable by a term of imprisonment up to four years. § 558.011.1(5). And possession of a controlled substance is a
Class D felony, which carries a maximum punishment of seven years imprisonment. § 558.011.1(4); see also §
579.015.2.

 10
test, courts are to compare only the statutory elements without regard to the particular manner in

which the offense is charged. State v. Hardin, 429 S.W.3d 417, 422 (Mo. banc 2014). In other

words, if the statutory elements of the offense of UUW-possession include all the legal and

factual elements of the offense of possession, then possession is included in the offense of UUW-

possession. And it clearly does: commission of all of the elements of the offense of possession

under § 579.015 is an explicit and necessary element of the offense of UUW-possession under §

571.030.1(11). Because it is not possible to commit UUW-possession without also committing

possession, possession is a “lesser-included” offense of the “greater” offense UUW-possession.

See State v. Wright, 608 S.W.3d 790, 795 (Mo. App. E.D. 2020).9

 The State disagrees, arguing that it is possible to commit the offense of unlawful use of a

weapon offense in many other ways, noting the other ten subsections of § 571.030.1(1)-(10).10

9
 Of course, by “greater” and “lesser-included” courts mean only to distinguish the number of elements in each
offense. This nomenclature has no relation to the felony classification of the offense. Nor does classification have
any bearing on whether one offense is included in another under the same elements test. Thus, we are not persuaded
by the State’s suggestion that UUW-possession cannot be deemed a greater offense than possession because it has a
lower felony classification.

10
 In its entirety, § 571.030.1 states:
 A person commits the offense of unlawful use of weapons, except as otherwise provided by sections
 571.101 to 571.121, if he or she knowingly:
 (1) Carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other
 weapon readily capable of lethal use into any area where firearms are restricted under section
 571.107; or
 (2) Sets a spring gun; or
 (3) Discharges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor
 vehicle as defined in section 302.010, or any building or structure used for the assembling of people;
 or
 (4) Exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an
 angry or threatening manner; or
 (5) Has a firearm or projectile weapon readily capable of lethal use on his or her person, while he
 or she is intoxicated, and handles or otherwise uses such firearm or projectile weapon in either a
 negligent or unlawful manner or discharges such firearm or projectile weapon unless acting in self-
 defense; or
 (6) Discharges a firearm within one hundred yards of any occupied schoolhouse, courthouse, or
 church building; or
 (7) Discharges or shoots a firearm at a mark, at any object, or at random, on, along or across a public
 highway or discharges or shoots a firearm into any outbuilding; or
 (8) Carries a firearm or any other weapon readily capable of lethal use into any church or place
 where people have assembled for worship, or into any election precinct on any election day, or into

 11
Because courts are to compare only the statutory elements of the offense without reference to

how the offense was charged, the State asserts it is improper to consider only the particular

UUW subsection under which Defendant was charged. Instead, it contends, we must consider the

entirety of § 571.030.1, like the Supreme Court of Missouri did when considering whether the

offense of violating an order of protection was included in the offense of aggravated stalking in

Hardin. See 429 S.W.3d at 423 (citing § 455.085 Rev. Mo. Stat. 2000 and § 565.225.3 Mo. Rev.

Stat. Cum. Supp 2009, respectively). In Hardin, the Supreme Court concluded that violation of a

protective order was only one of five alternative “aggravators” that elevated the offense stalking

in § 565.225.2 to the offense of aggravated stalking in § 565.225.3. Id.11 Though the defendant

had been charged with aggravated stalking based on violation of a protective order, the Court

held that it was possible under the statute to commit the crime in four other ways. Id. The Court

found that to focus on the particular aggravator used in the charging document would violate the

“indictment-based application” of the same elements test, which “has been expressly rejected.”

 any building owned or occupied by any agency of the federal government, state government, or
 political subdivision thereof; or
 (9) Discharges or shoots a firearm at or from a motor vehicle, as defined in section 301.010,
 discharges or shoots a firearm at any person, or at any other motor vehicle, or at any building or
 habitable structure, unless the person was lawfully acting in self-defense; or
 (10) Carries a firearm, whether loaded or unloaded, or any other weapon readily capable of lethal
 use into any school, onto any school bus, or onto the premises of any function or activity sponsored
 or sanctioned by school officials or the district school board; or
 (11) Possesses a firearm while also knowingly in possession of a controlled substance that is
 sufficient for a felony violation of section 579.015.

11
 At the time, § 565.225.3 provided:
 A person commits the crime of aggravated stalking if he or she purposely, through his or her course
 of conduct, harasses or follows with the intent of harassing another person, and:
 (1) Makes a credible threat; or
 (2) At least one of the acts constituting the course of conduct is in violation of an order of protection
 and the person has received actual notice of such order; or
 (3) At least one of the actions constituting the course of conduct is in violation of a condition of
 probation, parole, pretrial release, or release on bond pending appeal; or
 (4) At any time during the course of conduct, the other person is seventeen years of age or younger
 and the person harassing the other person is twenty-one years of age or older; or
 (5) He or she has previously pleaded guilty to or been found guilty of domestic assault, violation of
 an order of protection, or any other crime where the other person was the victim.

 12
Id. at 424 (citing State v. Smith, 592 S.W.2d 165, 166 (Mo. banc 1979)). Therefore, based solely

on the statutory elements without regard to how the offense was charged, the Court concluded

violating an order of protection was not an included offense of aggravated stalking. Id.

 The aggravators discussed in Hardin were not in and of themselves offenses, but rather

set out additional alternative elements the State could add to other elements to constitute the

singular offense of aggravated stalking under § 565.225.3. In contrast, the UUW statute sets out

“multiple offenses pertaining to the unlawful use of a weapon” which are simply “combined in” §

571.030.1. State v. Couts, 133 S.W.3d 52, 55 n.5 (Mo. banc 2004) (emphasis added). Each

enumerated subsection (1) through (11) of § 571.030.1 constitutes one of those multiple offenses,

each with a particular felony classification. See § 571.030.8. While each subsection represents

one way in which a weapon can be used unlawfully, each of those ways is actually an offense in

and of itself in the same way it would be if it were set out in a separate section of the criminal

code. The subsections are not alternative elements of or ways to commit a crime, they are the

crimes.

 Hardin does not require that we compare the statutory elements of all eleven of those

offenses to the statutory elements of possession to determine if possession is an included offense.

Rather, as our courts have routinely done when applying the same elements test to one of the

multiple offenses pertaining to the unlawful use of a weapon, we need consider only the statutory

elements of the relevant subsection of § 571.030.1. See, e.g., Bates v. State, 421 S.W.3d 547, 551

(Mo. App. E.D. 2014) (comparing elements in § 571.030.1(3) with first-degree assault statute);

Yates v. State, 158 S.W.3d 798, 801-02 (Mo. App. E.D. 2005) (comparing elements in §

571.030.1(3) with elements in § 571.030.1(9) and concluding they are “separate offenses”); State

v. Alexander, 505 S.W.3d 384, 398 (Mo. App. E.D. 2016) (comparing elements in §

 13
571.030.1(9) with first-degree murder statute); State v. Pollock, 738 S.W.2d 531, 533 (Mo. App.

W.D. 1987) (comparing elements in § 571.030.1(1) with unlawful possession of a concealable

firearm statute). Naturally, to determine which subsection is relevant in any given case, a court

must refer to the indictment to determine which offense is charged, but that does not constitute

an improper indictment-based application of the same elements test.

 The comparison of the statutory elements of the two offenses in this case demonstrates

that the offense of possession under § 579.015 is included in the offense of UUW-possession

under § 571.030.1(11). Thus, according to the general intent of the legislature expressed in §§

556.041(1) and 556.046.1(1), the two crimes cannot be punished cumulatively.12

 Point II is denied.

B. Timing of Double Jeopardy Challenge

 We return now to the State’s contention that it was premature for the trial court to dismiss

the possession count prior to being sentenced on that count because, until then, Defendant was

not in jeopardy of multiple punishments. Defendant counters that he was not seeking protection

only from cumulative punishment of these two offenses, but also from successive prosecution for

the possession count based on his previous conviction for UUW-possession. Therefore, he

argues, the pretrial dismissal to prevent continued prosecution of possession was proper. We

agree with Defendant.

12
 The State contends that because each statute addresses a separate harm--drugs in § 579.015 and unlawful use of
weapons in § 571.030--“this Court can presume the legislature intended separate punishments.” The State is
essentially asking us to disregard the results of the same elements test, which informs us that the legislature did not
intend cumulative punishment for these offenses because one is included in the other. The State’s citation to
Albernaz v. United States, 450 U.S. 333 (1981), is misplaced. In Albernaz, the Court applied the same elements test
under Blockburger, concluding that the two offenses at issue were “unequivocally” separate offenses and therefore
Congress intended them to be punished cumulatively. 450 U.S. at 338-39. The Court then stated that this conclusion
was “reinforced” by the fact that the two statutes were “directed to separate evils.” Id. at 343 (emphasis added). The
Court did not, as the State’s citation suggests, rely on a presumption about what Congress intended based on these
separate evils.

 14
 It is well-settled that if a defendant is convicted or acquitted of an offense in one

proceeding, the double jeopardy clause bars the State from prosecuting him for either a greater or

lesser-included offense in a subsequent proceeding. See generally Brown v. Ohio, 432 U.S. 161,

168-69 (1977). The successive prosecution protection provides the defendant the benefit of

finality and prevents the State from overreaching, thereby “exposing him to continued

embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an

impermissibly enhanced sentence” in a second prosecution. Ohio v. Johnson, 467 U.S. 493, 498–

99 (1984). The State is not, however, barred from charging a greater and a lesser-included

offense in the same indictment. See id. at 500. When those charges are prosecuted and resolved

simultaneously in the same proceeding, there is no double jeopardy problem unless and until the

defendant is convicted and subject to sentencing for those two offenses. Id.; see also Thompson,

581 S.W.3d at 636. This is easily understood: prior to sentencing, there is neither a multiple

punishment problem because no punishment has been imposed nor a successive prosecution

problem because no prior conviction or acquittal exists.

 The State contends that a defendant cannot create a successive prosecution double

jeopardy problem simply by pleading guilty to one of multiple offenses charged in a single

indictment. We agree that, according to Johnson and its progeny, when the defendant pleads

guilty to the lesser-included offense over the State’s objection, the State is not barred by double

jeopardy from continuing prosecution of the remaining greater offense. See Johnson, 467 U.S. at

501-02. In that scenario, the defendant can only assert a multiple punishment double jeopardy

challenge, if and when he is subject to sentencing for both. See id. at 500. But unlike the

defendant in Johnson--and its progeny and all of the other state and federal cases on this topic

revealed by our research--Defendant pleaded guilty to the greater offense of UUW-possession,

 15
leaving the lesser-included offense of possession pending.13 This is highly unusual and was

obviously motivated by the fact that UUW-possession has a lower sentencing range than

possession. And, although these offenses were charged in the same indictment, the State here--

unlike in Johnson--did nothing to prevent separate disposition of them. For the following

reasons, we do not believe Johnson requires that the State be permitted to continue prosecution

under these unique circumstances.

 In Johnson, the State charged the defendant with multiple offenses in a single indictment,

and the defendant pleaded, over the State’s objection, to only the lesser-included offenses and

then sought to have the remaining greater offenses dismissed. Id. at 494. The Supreme Court

explained that the concerns of “finality and prevention of prosecutorial overreaching” inherent in

the double jeopardy clause’s protection against successive prosecution were not implicated in

this scenario:

 No interest of [the defendant] protected by the Double Jeopardy Clause is
 implicated by continuing prosecution on the remaining charges brought in the
 indictment. Here [the defendant] offered only to resolve part of the charges against
 him, while the State objected to disposing of any of the counts against [the
 defendant] without a trial. [The defendant] has not been exposed to conviction on
 the charges to which he pleaded not guilty, nor has the State had the opportunity to
 marshal its evidence and resources more than once or to hone its presentation of its
 case through a trial. The acceptance of a guilty plea to lesser included offenses
 while charges on the greater offenses remain pending, moreover, has none of the
 implications of an “implied acquittal” which results from a verdict convicting a
 defendant on lesser included offenses rendered by a jury charged to consider both
 greater and lesser included offenses. There simply has been none of the

13
 We disagree with the State’s proposition that Johnson mandates reversal here regardless of the sequence of
events. The State cites from the following passage:
 Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae,
 are capable of being infinitely subdivided, so that a determination of guilt and punishment on one
 count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution
 on any remaining counts that are greater or lesser included offenses of the charge just concluded.
 We have never held that, and decline to hold it now.
467 U.S. at 501 (emphasis added). It is not clear that by declining to make that broad pronouncement, the Court
meant for its actual holding--“We now reverse the judgment of the Supreme Court of Ohio and hold that prosecuting
[the defendant] on the two more serious charges would not constitute the type of ‘multiple prosecution’ prohibited
by the Double Jeopardy Clause”--to apply beyond the facts of the case before it. Id. at 494.

 16
 governmental overreaching that double jeopardy is supposed to prevent. On the
 other hand, ending prosecution now would deny the State its right to one full and
 fair opportunity to convict those who have violated its laws.

Id. at 501–02 (internal citations omitted). The Court said the defendant had attempted to direct

“separate disposition of counts in the same indictment where no more than one trial of the

offenses charged was ever contemplated” by the State. Id. at 502. It also noted that double

jeopardy protections were inapplicable because “the State has made no effort to prosecute the

charges seriatim,” meaning one by one. Id. at 500, n.9 (rejecting the defendant’s alternative

collateral estoppel argument). The Court concluded that a defendant is not permitted to use

double jeopardy “as a sword to prevent the State from completing its prosecution on the

remaining charges.” Id. at 502; see also State v. Bally, 869 S.W.2d 777, 780 (Mo. App. W.D.

1994). Thus, the State was permitted to continue prosecution of the greater offenses. Johnson,

467 U.S. at 502.

 In Johnson, the Court was concerned that discontinuing the prosecution where the State

had steadfastly maintained its intention to pursue one trial of all the charged offenses would deny

the State its one constitutionally-permissible opportunity to convict the defendant for violating its

laws. But here, the State abandoned its pursuit of one trial for all the charged offenses in this

indictment when it took no action to prevent separate dispositions of them. The State lodged no

objection when Defendant stated his intent to plead only to either UUW-possession or

possession. It declined the trial court’s invitation to elect which one to pursue, voiced no

objection to Defendant’s selection of the UUW-possession count, and did not seek to withdraw

the plea agreement, even though it was based on a plea to all the charges. The State did not

object to the court’s acceptance of the Defendant’s plea to only UUW-possession or to him being

 17
sentenced on that count; in fact, it adjusted its sentencing recommendation to reflect that he had

pleaded guilty to fewer than all of the charges.

 Thus, unlike in Johnson, it was not the defendant’s attempt to use double jeopardy as a

sword that disrupted the government’s “one full and fair opportunity,” it was the State’s

acquiescence to resolution of these offenses “seriatim.” Id. at 502, 500, n.9. As a result, the

double jeopardy concerns inherent in any successive prosecution--finality and government

overreaching--are implicated here. When Defendant pleaded only to UUW-possession, admitting

that he possessed both the drugs and the gun, and was sentenced on that count--all without

objection from the State--Defendant could reasonably expect that, because the State had nothing

else to prove on the remaining count of possession, the matter had ended and the State would not

pursue it. Moreover, the trial court forewarned the parties of its belief that Defendant could not

be sentenced on both. And while the State may have been able to argue for imposing a sentence

on possession instead of UUW-possession had those convictions occurred at the same time, once

the trial court sentenced Defendant on the UUW-possession count, that argument would have

been futile at any future sentencing on the possession count. See State ex rel. Williams v. Wilson,

63 S.W.3d 650, 652 (Mo. banc 2002) (“Once judgment and sentencing occur in a criminal

proceeding, the trial court has exhausted its jurisdiction and can take no further action except

when otherwise expressly authorized by statute or rule”). The State’s insistence on pursuing

conviction on the possession count under these circumstances is overreaching. Defendant should

not have to endure the embarrassment, anxiety, and expense of continued prosecution in this case

any more than he should have to endure those effects of a subsequent prosecution of that offense.

 18
 In these particular circumstances, we conclude that double jeopardy precluded the State

from continuing prosecuting the possession count after Defendant pleaded guilty to and was

sentenced, without objection from the State, to the greater offense of UUW-possession.

 Point I is denied.

 V. Conclusion

 For the foregoing reasons, we conclude it was not error for the trial court to grant

Defendant’s motion to dismiss Count I prior to sentencing on that count. The judgment is

affirmed.

 _______________________________
 Colleen Dolan, P.J.

Robert M. Clayton III, J., concur.
Kelly C. Broniec, J., concur.

 19